UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
UNITED STATES OF AMERICA,

-v-

RAUL BARBON and
JOHANS SANTATA,
                                        Defendants.
------------------------------------------------------------------X


# REPLY MEMORANDUM OF LAW IN SUPPORT OF RAUL BORBON'S PRETRIAL MOTION'S


Submitted by:
James Lenihan
Attorney for Defendant, Raul Borbon
235 Main Street
White Plains, New York 10601

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
UNITED STATES OF AMERICA,

-v-                                                    07- CR- 986 (WHP)

RAUL BARBON and
JOHANS SANTATA,
                              Defendants.
-------------------------------------------------------------------X

## REPLY MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT RAUL BORBON' PRETRIAL MOTIONS


Defendant, RAUL BORBON, respectfully submits this Reply Memorandum of
Law in support of his pretrial motions for an Order (1) suppressing certain evidence
obtained from defendant incident to a warrantless search, seizure, and arrest that
lacked probable case, pursuant to Fed. R. Crim. P. 12(b)(3)(C), and thereupon,
dismissing the Indictment; (2) suppressing certain evidence obtained pursuant to the
seizure / search warrant issued herein for the defendant's apartment as such warrant
was issued based upon false and misleading information presented to the issuing judge,
pursuant to Fed. R. Crim. P. 12(b)(3)(C); (3) suppressing any and all statements made
by the defendants herein as such statements, if made, where made without the proper
Miranda warnings; and  (4) for such other and further relief as the Court may deem just
and proper.

## ARGUMENT

## POINT ONE

**THE GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION
TO SUPPRESS LACKS FACTS THAT WOULD
JUSTIFY THE NYPD OFFICER'S WARRANTLESS ENTRY
INTO THE DEFENDANT'S APARTMENT.**

Since the touchstone of the Fourth Amendment is reasonableness, any government intrusion into a person's home is viewed on first blush as presumptively unreasonable. *Payton v. New York,* 445 U.S. 573, 585 (1980). This presumption may be overcome only if the government can set forth a valid reason why they could not first obtain a warrant prior to entering the home. *See*, *Mincey v. Arizona,* 437 U.S. 385, 393-394 (1978) ("[W]arrants are generally required to search a person's home or his person unless 'the exigencies of the situation' make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment.").

The principles governing warrantless searches based on "exigent circumstances" are well settled. Since the Founders did not trust constables, sheriffs and other officers to decide for themselves when they had probable cause to search houses, individuals and places of business, they set forth the warrant requirement. *See*, U.S.Const. amend. IV; *Coolidge v. New Hampshire,* 403 U.S. 443, 454-55 (1971).

The Government attempts to mislead this Court into believing that Officer Maier and other NYPD officers only approached the Defendant's apartment once. This is categorically untrue.

The Government's version of events leading up to the officer warrantless entry into the Defendant's apartment is completely false. In an attempt to boot strap the warrantless entry into in to a valid search, the Government attempts to combine two events into one.

In Government's version of events, after the NYPD officers stopped Johns Santana exiting the building Santana tells the officers that he was at Borbon's Apartment 6B. Santana is detained while two officers verify his statements. When the two officers approach Borbon's apartment 6B, Officer Maier smelled a strong odor of marijuana coming from the Defendant's apartment. The officers knocked on the Defendant's door and Borbon answered it.  With the apartment door ajar Officer Maier spotted the presence of an illegal drug operation and then the officers entered the Defendant's apartment. (*See,* Gov. Response at p.2.)

Not surprisingly, Defendant Borbon has a completely different version of events from that night. In both his affidavits, the Defendant unequivocally states that the police came to his apartment two times that night. The first time at about 10:40 p.m. a single officer knocked on his door to verify if Johns Santana was at his apartment. The Defendant told the officer that Johns Santana was at his apartment, they talked in the hallway and Santana had just left. The officer said "ok" and also left. (*See,* Affidavit of Defendant Borbon dated May 5, 2008 at ¶ 4 (Def. May 5 Aff.); Affidavit of Defendant Borbon dated May 28, 2008 at ¶ 3-4 (Def. May 28 Aff.)).

The second time was about twenty minutes later when two officers were pounding and kicking the Defendant's door and commanding the Defendant to open the door. When the Defendant attempted to open the door to speak to the officers, they forced their way inside and arrested him. (*See*, Def. May 5 Aff. at ¶ 6-7; Def. May 28 Aff. ¶ 4.)

Accordingly, if Officer Maier "smelled a strong odor of marijuana coming from the defendant's apartment" it was during his first trip to the Defendant's apartment when he verified that Johns Santana visited Borbon and not the second trip when the officers forced their way into the Defendant's apartment.

The Government concedes that Officer Maier obtained the requisite cause needed to secure a warrant before he knocked on the Defendant's door, but the Government fails to articulate any exigent circumstances that would allow the NYPD officers to forcibly enter the Defendant's apartment without a warrant and without consent. *United States v. MacDonald*, 916 F.2d 766, 769-70 (2d Cir.1990) (in banc), *cert. denied.* 498 U.S. 1119 (1991).

The Government, emphasizes the allegation that Officer Maier "[u]pon arriving at Borbon's apartment, [ ] smelled a strong odor of marijuana coming from the defendant's apartment." (Gov. Response at p.2). Since the presence of a strong odor of marijuana alone is indicative of criminality for which a search warrant could be secured, *See*, *United States v. Pond, D.C.*, 382 F.Supp. 556 (S.D.N.Y. Sep 30, 1974) ("It seems clear to this Court from these cases that while it is true that the detection of drugs or alcohol odors, without more, will not justify an arrest or a search without a warrant, it may well support the issuance of such a warrant."); *People v. Tyrell*, 11 Misc.3d 1052(A), 814

N.Y.S.2d 892 (Table) (2006), Officer Maier was required to obtain a warrant at least before he knocked on the Defendant's door and the NYPD officers forced there way into the Defendant's apartment. Officer Maier's intentional disregard to obtain a warrant is exactly what the Framers wanted to prevent when they adopted the Fourth Amendment.

Notwithstanding the presumption that warrantless searches are *per se* unreasonable, they are not absolutely forbidden by the Fourth Amendment. *Mincey,* 437 U.S. at 393-394. Before a warrantless entry can past muster however, there must be probable cause **and** there must be an emergency, Coolidge, at 403 U.S. at 470.

In *Coolidge,* the Supreme Court explained that:

> [T]he most basic constitutional rule in this area is that "searches conducted outside the judicial process, without *prior* approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment-subject only to a few specifically established and well-delineated exceptions." The exceptions are "jealously and carefully drawn," and there must be "a showing by those who seek exemption . . . that the exigencies of the situation *made that course imperative*." "[T]he burden is on those seeking the exemption to show the need for it." (Emphasis added and footnotes omitted.)

403 U.S. at  454-55

The Government's response set forth clear and unambiguous facts that support probable cause for a warrant once Officer Maier arrived at the Defendant's door. The Government's failure to justify Officer Maier's disregard for the Framers dictates by not seeking a warrant before entering the Defendant's apartment is fatal to their argument.

Once Officer Maier reached the Defendant's door and "smelled a strong odor of marijuana" he had probable cause to obtain a warrant and should have sought one at that time.  He did not. When Officer Maier eschewed any attempt to obtain a warrant and knocked on the Defendant's door, he did so with the clear intent to enter the

Defendant's apartment and seize any marijuana therein; a clear violation of the warrant requirement. *Payton,* 445 U.S. at 589.

Accordingly, once Officer Maier "smelled the strong odor of marijuana" emanating from the Defendant's apartment he was obligated to seek a warrant since he believed that he would find contraband or evidence of a crime inside the Defendant's apartment. *U.S. Const. amend. IV, see also, Payton,* 445 U.S. 573. Officer Maier and the other NYPD officer were not authorized to return to the apartment a second time and forcibly enter the Defendant's apartment.

## POINT TWO

**THE GOVERNMENT FAILED TO ARTICULATE WHAT EXIGENT CIRCUMSTANCES EXISTED THAT ALLOWED THE NYPD OFFICERS TO ENTER THE DEFENDANT'S APARTMENT WITHOUT A WARRANT.**

It is well established that, even when officers have probable cause to believe that contraband is present in a home, a warrantless search of the home is unlawful unless exigent circumstances exist *at the time of entry*. *See Payton,* 445 U.S. at 589.

The government bears the burden of demonstrating exigent circumstances that overcome their presumptively unreasonable entry. *See Welsh v. Wisconsin,* 466 U.S. 740, 749-50, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984); *Vale v. Louisiana,* 399 U.S. 30, 34, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970). At bar, the Government failed to articulate any facts to justify Officer Maier's failure to obtain a warrant or to validate the NYPD officers' subsequent warrantless entry in to the Defendant's apartment.

The Government sets forth a strained argument in attempt to justify the NYPD officers' warrantless entry into the Defendant's apartment; however it must fail. In their

response the Government claims that after Officer's Maier knocked on the Defendant's door and while the door was ajar Officer Maier saw items used in an illegal drug operation in "plain view," (Gov. Response at p.2), thus allowing the officers to entry the Defendant's apartment without first obtaining a warrant. It is uncontested that their entry was without Defendant's consent.

If the Government's argument is to be believed, Officer Maier's actions after smelling a "strong odor of marijuana coming the defendant's apartment" violated the dictates for a warrantless entry. The act of knocking the Defendant's door, after allegedly smelling marijuana coming from the Defendant's apartment, could only be done with the intent to enter the Defendant's apartment and seize any marijuana therein; thus side stepping the warrant requirement. *McDonald v. United States*, 335 U.S. 451, 454-455 (1948). Moreover once Officer Maier knocked on the Defendant's door he created the "plain view" exception to the warrant requirement. *See, U.S. v. Coles*, 437 F.3d 361 (3rd Cir. 2006) ("Exigent circumstances, however, do not meet Fourth Amendment standards if the government deliberately creates them."); *United States v. Timberlake,* 896 F.2d 592, 597 (D.C.Cir.1990).

In addition, the Government dose not offer any explanation why Officer Maier failed to obtain a warrant immediately after he smelled a strong odor of marijuana coming from the Defendant's apartment. *Johnson v. United States,* 333 U.S. 10, 15 (1948).

In *Johnson* officers obtained information from an informant that people were smoking opium in a hotel. When the officers went to the hotel to investigate, they immediately recognized the smell of opium, and then traced the odor to a particular

room. The officers knocked and identified themselves as police. After a slight delay the defendant opened the door. The lead officer told the defendant that he wanted to talk to her about the opium smell, and the defendant let the officers into the room. The officers proceeded to arrest the person who opened the door and searched the room, uncovering incriminating opium and smoking apparatus. A district court refused to suppress the evidence, and the Ninth Circuit affirmed.

In reversing, the Supreme Court determined, inter alia, that "[a]t the time entry was demanded the officers were possessed of evidence which a magistrate might have found to be probable cause for issuing a search warrant," and thus held that the warrantless search was unconstitutional, since "[n]o reason is offered for not obtaining a search warrant except the inconvenience to the officers and some slight delay necessary to prepare papers and present the evidence to a magistrate. These are never very convincing reasons." *Johnson*, 333 U.S. at 15

Accordingly, since the Governments fails to set forth an articulable reason why Officer Maier did not seek a warrant once he smelled a "strong order of marijuana coming from the defendant's apartment," the NYPD officers entry into the Defendant's apartment must be deemed unconstitutional and all evidence sized thereafter suppressed. *Wong Sun v U.S.*, 371 U.S. 471 (1963)

## CONCLUSION

For all the foregoing reasons, the Court should grant defendant, RAUL BORBON'S pretrial motions.


Dated: WHITE PLAINS, NY
      May 29, 2008


Respectfully Submitted,


/s/ James Michael Lenihan
James Michael Lenihan
Attorney for Defendant Raul Borbon