UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
UNITED STATES OF AMERICA,

-v-

RAUL BARBON and
JOHANS SANTATA,
                              Defendants.
------------------------------------------------------------------X

AFFIDAVIT IN SUPPORT
OF MOTION TO
SUPPRESS

07- CR- 986 (WHP)

**STATE OF NEW YORK      )**
**COUNTY OF WESTCHESTER  ).ss:**

I, RAUL BORBON, a defendant in the above captioned matter, submit this affidavit in support of my pretrial motions.

1. I respectfully request that the Court grant my motions to suppress and/or dismiss based upon the facts of this case.

2. I have read the Government's response to my motion to suppress and submit this Affidavit in Reply.

3. Let me state again that when the NYPD officers forced there way into my apartment it after the second time they knocked on my door that night and not when one officer first came to verify Johns Santana's statement that he was at my apartment as the Government wants this Court to believe.

4. As I stated in my first affidavit at about 10:40 p.m. I answered a knock at my door, there was only one officer at that time and I told him that Johns Santana was at my apartment. The officer left. After about 20 minutes I heard a second knock at my door, it was the police again however when I went to answer the door this second time the police forced there way inside and arrested me.

5. The Government contends that Officer Maier smelled a strong odor of marijuana coming from my apartment, knocked on my door and while the door ajar he saw "several large bags of Miracle-Gro, several black bags containing stalks of marijuana plants, and books relating to "How to Grow Marijuana;" thus allowing him to enter my apartment. This contention is untrue.

6. As I also stated in my last Affidavit, because of the ventilation system set-up inside my apartment there was no way Officer Maier could smell "a strong

odor of marijuana coming from my apartment" or a faint odor, or any odor for that matter.

7. My attorney told me that we requested copies of the photos taken of the apartment by the NYPD officers after they entered and searched my apartment. My lawyer also told me that the Assistant United States Attorney informed him that the NYPD officers did not take any pictures of the apartment. This is also untrue. I was in the apartment, handcuffed, and under arrest when officers from the NYPD took pictures of my apartment in my presence.

8. The Government must produce these pictures. They will clearly show that Officer Maier's claims with respect to smelling marijuana and seeing "several large bags of Miracle-Gro, several black bags containing stalks of marijuana plants and books relating to "How to Grow Marijuana" while my door was ajar, is patently untrue and physically impossible.

9. The NYPD officers took photographs of my ventilation systems while it was still installed and running, which would show that the limited amount of odor inside the bedroom where the plants were growing was vented directly out the back window of that room and undetectable from the hallway or front door.

10. These photographs also show that there were no black bags containing stalks of marijuana plants inside my apartment.

11. In addition, the pictures would show that the bags of Miracle-Gro that officer Maier claimed to see when my door was ajar were in fact wrapped inside dark plastic bags that concealed any marking of the Miracle-Gro bags.

12. Furthermore, the books that Officer Maier claimed to have seen from the front door were in fact located behind a stack of boxes which made it impossible to for anyone to see the books or their titles from the front door. In fact before a person could see actually see the books they would have to enter into the apartment by walking around the boxes that were stacked to the ceiling and then look up to the top-self of the television stand to see the books. There was no way Officer Maier saw the books from the front door.

13. The Government contends that during an interaction with the officers I stated that there was a firearm inside the apartment. At no time did I tell any officer that there was a gun in my apartment, in fact while handcuffed one of the officers asked if there was someone else inside the apartment which I responded "no," I did not make any statement about a gun being inside the apartment.

14. The gun the officer's claimed to have found inside the closet was in fact discovered during a search of the apartment I was still inside the apartment. At no time while I lived in the apartment did I know that there was a gun inside the closet.

Dated: White Plains, NY
May 28, 2008

_____
RAUL BORBON

On the 28th day of May in the year 2008 before me, the undersigned, personally appeared RAUL BORBON, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
JAMES M. LENIHAN
Notary Public, State of New York
No. 02LE5089181
Qualified in Westchester County
Commission Expires December 8, 2008