UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
UNITED STATES OF AMERICA,

-v-                                                                                   07- CR- 986 (WHP)

RAUL BARBON and
JOHANS SANTATA,
                                              Defendants.
-----------------------------------------------------------------X

# MEMORANDUM OF LAW
# IN SUPPORT OF RAUL BORBON'S
# PRETRIAL MOTION'S

Submitted by:
James Lenihan
Attorney for Defendant, Raul Borbon
235 Main Street
White Plains, New York 10601

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
UNITED STATES OF AMERICA,

-v-                                                                                    07- CR- 986 (WHP)

RAUL BARBON and
JOHANS SANTATA,
                                                  Defendants.
-------------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT RAUL BORBON' PRETRIAL MOTIONS

Defendant, RAUL BORBON, respectfully submits this Memorandum of Law in support of his pretrial motions for an Order (1) suppressing certain evidence obtained from defendant incident to a warrantless search, seizure, and arrest that lacked probable case, pursuant to Fed. R. Crim. P. 12(b)(3)(C), and thereupon, dismissing the Indictment; (2) suppressing certain evidence obtained pursuant to the seizure / search warrant issued herein for the defendant's apartment as such warrant was issued based upon false and misleading information presented to the issuing judge, pursuant to Fed. R. Crim. P. 12(b)(3)(C); (3) suppressing any and all statements made by the defendants herein as such statements, if made, where made without the proper Miranda warnings; (4) permitting defendant JOHANS SANTATA to join in and adopt as his own any motion the instant motion; and (5) for such other and further relief as the Court may deem just and proper.

## FACTS

Defendant, RAUL BORBON, ("BORBON") and co-defendant, JOHNA SANTATA ("SANTATA") are charged in a one-count indictment with violation of Title 21 U.S.C. §

812 (a)(1) and § 841 (b)(1)(B), possession with the intent distribute a quantity of marijuana, and Title 18 U.S.C. § 2, aiding and abetting. Attached hereto and made part hereof as Exhibit "B" is the Indictment.

On May 18, 2007 at approximately 10:30 pm, SANTATA went to BORBON'S apartment 6B, at 2244 Creston Avenue, Bronx NY. After SANTATA arrived at BORBON'S apartment, the defendants spoke for approximately ten minutes. After the defendants finished talking, SANTATA left the building.

SANTATA left the building and was entering a car owned and driven by Veronica Malden that was parked outside 2244 Creston Avenue. NYPD Officer Kurt Maier stopped SANTATA and asked him where he was coming from. SANTATA stated his friend's apartment 6B.

Officer Mair approached SANTATA and after telling SANTATA that he "smelled like cocaine," Officer Maier searched SANTATA and had him and Veronica Maldando detained while he went to apartment 6B. Officer Maier entered 2244 Creston Avenue and knocked on apartment 6B. Defendant BORBON looked through the peep-hole and saw a police officer standing there. With the door chain attached, BORBON opened the door at which time Officer Maier asked BORBON if someone came up to visit him. BORBON told the officer that Johans SANTATA was just there; they spoke in the hallway; and that he just left. Officer Maier said "ok" and left. BORBON shut the door.

Officer Maier then returned to SANTATA and again searched him and Veronica Maldonado. At this time SANTATA was arrested and charged with Criminal Trespass in the second degree. Veronica was detained; her car was transported to the 46th Precinct

where it was searched. Ms. Maldonado and her car were subsequently released that night.

At about 11 p.m. that night, Officer Maier and another NYPD officer went back to BORBON'S apartment. This time however, both officers were pounding on BORBON'S door and commanding him, in very loud voices, to open the door immediately. In response BORBON yelled to the police that he was putting on his pants and would step outside and talk with them in the hallway.

With the lights still off, BORBON again went to the door to talk to the police, however, when BORBON attempted to open the door to step into the hallway and speak to the police, both officers physically pushed BORBON back into the apartment and handcuffed him.

According to the Sealed Criminal Complaint filed herein (Exhibit "C") while inside the apartment and with BORBON handcuffed, Officer-1 conducted a warrantless search of the apartment. Officer-1 removed the mylar-like plastic sheeting, which was taped floor-to-ceiling and wall-to-wall and searched the living room in which he discovered a growing light and several trays ready for germination. Officer-1 then searched the bedroom at which time he observed 166 marijuana plants, ventilation duct-work and system, and lighting systems with timers attached. Officer-1 during this search also claimed to observe, in an open closet across the hall from the bathroom, an"object wrapped tightly in a plastic bag bearing a distinct shape of a firearm."

BORBON was removed from the apartment and transported to the precinct. The following day, May 19, 2008 Officer Maier applied for and received a seizure / search

warrant.[1] Pursuant to the seizure / search warrant issued by a New York Supreme Court Judge, the NYPD recovered evidence from BORBON'S apartment that the government now wishes to use in a trial against the defendants. Defendants move for suppression.

## ARGUMENT

### POINT ONE

**ALL EVIDENCE OBTAINED FROM RAUL BORBON'S APARTMENT AS A RESULT OF THE NYPD'S WARRANTLESS ENTRY MUST BE SUPPRESSED BECAUSE THE ENTRY WAS IN VIOLATION OF THE FOURTH AMENDMENT**

On May 18, 2007 at approximately 10:30 PM, defendant SANTATA went to defendant BORBON'S apartment at 2244 Creston Avenue, Bronx NY. While there both defendants spoke for approximately ten minutes in the hallway outside apartment 6B. After they finished talking, SANTATA left the building. Before SANTATA could enter Veronica Maldonado's car, which was parked outside 2244 Creston Avenue, Officer Kurt Maier stopped him and questioned him. He demanded to know where SANTATA was coming from, to which SANTATA replied "his friend's apartment 6B."

While both SANTATA and a Veronica Maldonado were detained by other NYPD officers, Officer Maier went to apartment 6B to verify SANTATA'S story. Officer Maier knocked on the door to BORBON'S apartment and after looking through the peep-hole, saw a police officer standing there. BARBON, with the lights off and the door-chain

---

[1] The information contained in Officer Maier's affidavits and his oral testimony, both in support of his warrant application, is discussed more fully below.

attached, opened the door at which time Officer Maier asked him if Johans SANTATA was just at his apartment. BARBON stated that he was and closed door.

About twenty minutes later approximately two officers from the NYPD returned to BORBON'S apartment without a warrant, or even an application for one, started kicking and pounding on BORBON'S apartment door until BORBON came to the door.

With lights out, BORBON tried to open door enough so he could slip out into the hallway. However, before getting a chance to step into the hall the officers rushed BORBON and forced their way into his apartment.

BORBON contends that this warrantless entry into his apartment by officers of the NYPD was unlawful and in violation of his rights Fourth Amendment of the United States Constitution. See, Payton v. New York, 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), ("Fourth Amendment privacy interests are most secure when an individual is at home with doors closed and curtains drawn tight.  Thus "searches and seizures inside a home without a warrant are presumptively unreasonable."). See also, Mincey v. Arizona, 437 U.S. 385, 390, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978) ("The Fourth Amendment proscribes all unreasonable searches and seizures, and it is a cardinal principle that searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment-subject only to a few specifically established and well-delineated exceptions.") (internal citations and quotation marks omitted); United States v. Kiyunyung, 171 F.3d 78, 83 (2d Cir.1999).

**STANDING**

The uncontroverted facts herein demonstrate that BORBON had an expectation of privacy in the apartment where he lived for over a year. BORBON lived by himself and he alone controlled who came and went from his apartment.

Once a defendant with a reasonable expectation of privacy in the area searched challenges a warrantless search as unreasonable under the Fourth Amendment, the burden shifts to the government to demonstrate the presence of an exception to the warrant requirement. Welsh v. Wisconsin, 466 U.S. 740, 750, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984); *see also* United States v. Perea, 986 F.2d 633, 639 (2d Cir.1993); United States v. Arboleda, 633 F.2d 985, 993 (2d Cir.1980), *cert. denied,* 450 U.S. 917, 101 S.Ct. 1362, 67 L.Ed.2d 343 (1981).

**PLAIN VIEW EXCEPTION**

In the Sealed Complaint the police claim that their warrantless search was prompted when Officer -1 observed, from outside of BORBON'S apartment certain items used for growing of marijuana.

Generally, "[s]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment-subject to only a few specifically established and well-delineated exceptions," Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), and the plain view doctrine is a well-established exception to the Fourth Amendment's warrant requirement. Ruggiero v. Krzeminski, 928 F.2d 558, 561 (2d Cir.1991).

In the Sealed Complaint Detective Madera states that Officer-1 and Officer-2 knocked on apartment 6B, announced their presence, and RAUL BORBON opened the door. Officer -1 claims he observed, from the outside the apartment, in plain view and in full sight in the foyer, inter alia: several large bags of Miracle-Gro, numerous small, plastic bags containing the remnants of dirt, leaves, and stems of-what appeared to be dried marijuana plants, numerous books, magazines, and VHS tapes relating to growing and use of marijuana, and a distinct and strong odor commonly associated with marijuana. Thereafter, Officer-1 and Officer-2 entered Apt. B. See, Sealed Complaint, Exhibit "C". Notwithstanding the officer's rendition of events, defendant BORBON adamantly denies the contentions of the arresting officers and sees the events in a different light, that of complete and total darkness.

BORBON disputes Officer-1's claim of seeing items in the foyer when he opened the door. In his affidavit BORBON emphatically stated that the two times he went to answer the door he did so knowing that police were at this door, having seen them thorough the peephole, and therefore answered the door with the lights off and opened the door just enough to speak with the police, thus rendering impossible for anyone to see inside his apartment. See, BORBON'S affidavit at ¶¶ 3 and 6.

BORBON further states that the items Officer-1 claims to have seen "from outside the apartment," and "observed in pain view" could not have been seen or observed as Officer-1 claimed. First, BORBON asserts that all the bags of Miracle-Gro where placed inside black plastic trash bags concealing from any view the nature of the objects inside the garbage bags. Second, the other items claimed to have been seen by Officer-1 as the door opened also could not have been seen in plain view, as they were

either not in the foyer as claimed by Officer-1 or also concealed in black garbage bags. See, BORBON'S affidavit at ¶12.

**VENTILATION SYSTEM**

Officer-1 further claimed to have smelled "a distinct and strong order commonly associated with marijuana." This claim is also disputed by defendant BORBON which is ratified, ironically by Detective Madera's sworn statement in the Sealed Complaint.

In his affidavit BORBON explains that, since his ventilation system expelled all odors to outside of the apartment building from the room farthest from the front door, Officer-1 could not have smelled "a distinct and strong order commonly associated with marijuana" as he claimed. See, BORBON'S affidavit at ¶9.

Since Officer-1 and Officer-2 entered BORBON'S apartment with either a warrant or an exception to the Fourth Amendment's warrant requirement, all evidence derived from their illegal entry into BORBON'S apartment must be suppressed as fruit of the poisonous tree. Wong Sun v. United States, 371 U.S. 471, 484 (1963).

Moreover all evidence discovered after the officers entry BORBON'S apartment must also be suppressed. Wong Sun v. United States, supra; Henry v. United States, 361 U.S. 98, 442 U.S. 200, 216 (1979)

Since the warrantless entry into BORBON apartment and his subsequent arrest were not based on probable cause; thus unlawful, the indictment against the Defendants must be dismissed. Furthermore, any items seized from him or his apartment will not be admissible at trial. Henry v. United States, 361 U.S. at 102. The "fruit of the

poisonous tree" doctrine clearly applies. <u>Wong Sun v. United States</u>, 371 U.S. at 488. The combination of the warrantless entry, arrest, illegal search, and the Wong Sun doctrine mandate suppression of all physical evidence and the arrest of BORBON. The only practical remedy is dismissal of the indictment.

## POINT TWO

### THE AFFIDAVIT SUBMITTED IN SUPPORT OF THE SEIZURE / SEARCH WARRANT CONTAINED RECKLESS AND/OR INTENTIONAL MISSTATEMENTS OF MATERIAL FACT REQUIRING THE <u>SUPPRESSION OF THE FRUITS OF THE SEARCH.</u>

In <u>Franks v. Delaware</u>, 438 U.S. 154 (1978), the United States Supreme Court held that the reckless or intentional misstatement of a material fact (that is, a fact which is essential to the finding of probable cause) in a search warrant affidavit requires suppression of the fruits of the resulting search under the Fourth Amendment to the United States Constitution. <u>Id</u>. at 155-156. It is clear that Officer Maier intentionally and/ or recklessly misrepresented material facts in his affidavit and oral testimony in support of the seizure / search warrant for defendant's BORBON'S apartment.

In his affidavit in support of his warrant (Exhibit "D"), Officer Maier claims, that he was on patrol of the premises and just happen to encounter "a strong odor of marijuana coming from the premises" and after observing a strong order coming from "the subject premises" he knocked on BORBON'S apartment door and after BORBON opened said door Maier states he saw the following from the front door:

> Deponent further states that upon opening said door deponent observed based on his training and experience a strong odor of marijuana emanating from inside said subject premise, Deponent further states that deponent observed several large bags of Miracle Grow fertilizer in the foyer of said premise. Deponent further observed several black bags containing stalks of marijuana plants. Deponent states that he further observed mylar sheets taped to the walls and

> ceiling of said premises. Deponent further observed industrial silver air ducts running the length of living room from the ceiling to the floor. Said air ducts also ran from the bedroom to the living room. Deponent further observed numerous mini pots of dirt in the living room and approximately over 150 potted marijuana plants inside the bedroom of said premise. Deponent further states that he observed numerous books inside said location referring to "How to Grow Marijuana"

Maier affidavit Exhibit "D"

The first part of Officer Maier's statement, that he was on patrol at 2244 Creston Avenue is the first misrepresentation in his affidavit. Officer Maier never tells the judge why he was <u>inside</u> the apartment building in the first instance or why he was outside BORBON's apartment at that exact time. What brought Officer Maier and another officer back to BORBON'S apartment door at that exact time was not based upon any probable cause to believe that BORBON possessed marijuana or the officers subsequent warrantless entry into BORBON'S apartment. He misleads the court to believe that while on routine patrol, he smelled marijuana which gave him probable causes.

Moreover, Officer Maier's statements that he saw certain items when BORBON open the door, is another false and misleading representation that was material to the judges issuance of the seizure /search warrant for BORBON'S apartment. Attached hereto and made part hereof as Exhibit "E" is the transcripts from the Officer's Maier's Application for a Search Warrant.

In his affidavit Officer Maier misleads the issuing judge to believe that when BORBON opened the door he observed all the following,

> … several black bags containing stalks of marijuana plants. Deponent states that he further observed mylar sheets taped to the walls and ceiling of said premises. Deponent further observed industrial silver air ducts running the length of living room from the ceiling to the floor.

> Said air ducts also ran from the bedroom to the living room. Deponent further observed numerous mini pots of dirt in the living room and approximately over 150 potted marijuana plants inside the bedroom of said premise. Deponent further states that he observed numerous books inside said location referring to "How to Grow Marijuana"

Maier affidavit, Exhibit "D"

However, Maier's claims are contradicted by Detective Manuel Madera's sworn statement in the Sealed Criminal Complaint. (Exhibit "C") Detective Madera states in his sworn statement that Officer-1 told him that:

. . .

> c. Thereafter, Officer-1 and Officer-2 <u>entered</u> Apt. B. Officer-1 also observed a living room blocked off with mylar-like plastic sheeting, which was taped floor-to-ceiling and wall-to-wall. In addition, silver -Ventilation ducts were observed running around the outside of the floor of the living room and along the walls.
>
> d. Further, inside the living room, Officer-1 observed, among other things, grow lights and several trays ready for germination.
>
> e. Inside the bedroom, Officer-1 observed, among other things:
>   i. 166 marihuana plants;
>   ii. additional ventilation duct-work;
>   iii. ventilation systems;
>   iv. lighting systems; and
>   v. various timers connected to the lighting system.

Officer Maier clearly included Items that where inside other rooms which could not have physically been seen from the front as claimed in his affidavit in support of his seizure / search warrant.

With respect to the other items Officer Maier claims to have seen when BORBON opened the front door, BORBON clearly states that "Any items placed inside my foyer that I used for growing marijuana were placed inside black plastic garbage bags,"

(BORBON'S Affidavit at ¶12). This clearly contradicts Officer Maier's contentions that he observed other items in plain view when BORBON opened the door.

Accordingly, based on information presently available to defense counsel, it is clear that these misstatements and / or omissions contained within the affidavit in support of the search warrant likely constitute reckless or intentional misstatements which would require the suppression of all evidence seized pursuant to the search warrants in accordance with Franks v. Delaware, supra, at 155-156.

## POINT THREE

### ANY STATEMENTS MADE BY THE DEFENDANT MUST BE SUPPRESSED BECAUSE THE NYPD OFFICER VIOLATED MIRANDA

It is axiomatic that law enforcement officers must provide Miranda warnings to a suspect in custody prior to interrogating the suspect. Miranda v. Arizona, 384 U.S. 436, 444 (1966); accord, Beckwith v. United States, 524 U.S. 341, 344-48 (1976). The premise of Miranda is that custodial interrogation is inherently coercive, and that a suspect must be apprised of his rights to ensure that he has the opportunity to exercise his Fifth Amendment privilege against self-incrimination. Miranda v. Arizona, 384 U.S. at 467.

Absent some exigency clearly not present in this case, a suspect taken into custody must first be told of his rights, and given a chance to exercise them if he so chooses, before he can be lawfully questioned.

In this case, BORBON was taken into custody immediately after the NYPD officers pushed BORBON back into his apartment and handcuffed him. After the search of the apartment Officer Maier while BORBON was handcuffed and not free to leave, allegedly asked BORBON if there was anything in the apartment that could be harmful and BORBON allegedly stated that he believed there was a semi automatic firearm inside the apartment.

There is no doubt that BORBON was in custody when he allegedly made this statement for which the officers should have first advised BORBON of his Miranda warnings.

This alleged statement even though not in the nature of a confession should be suppressed based upon two grounds - the Miranda violation and the Wong Sun doctrine in Point One above.

## RESERVATIONS OF MOTIONS

Defendant, BORBON has requested additional discovery from the government to which he believes he is entitled. Defendant's discovery letter attached hereto and made part hereof as Exhibit "F." Although the government has not yet responded, the defendant has no reason to believe that the United States Attorney's Office would not prove the information requested, once in their possession. However, Defendant's concern doses not lie with the U.S. Attorney Office, but with the NYPD in this matter.

One more then one occasion the Defendant has requested documents and has been told by AUSA Ben Neftalis that the NYPD said they did not exist only to find out at a latter date that the NYPD was not forthright with the Mr. Neftalis.

Therefore, defendant respectfully asks to reserve any appropriate motions until such time as the government has completely fulfilled its discovery obligations.

## CONCLUSION

For all the foregoing reasons, the Court should grant defendant, RAUL BORBON'S pretrial motions.

To the extent any of the pretrial motions made by RAUL BORBON are applicable to JOHANS SANTATA, he joins in these motions and asks for the relief requested therein.

Dated: WHITE PLAINS, NY
      May 5, 2008

                                         Respectfully Submitted,

                                         James Michael Lenihan
                                         Attorney for Defendant Raul Borbon